UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| FELIX MONTANEZ, | : |
| --- | --- |
| Plaintiff, | : |
| | : Case No. 3:07CV236(MRK) |
| v. | : |
| | : |
| | : |
| A. CUOCO, ET AL., | : |
| Defendants. | : |

## RULING

Plaintiff Felix Montanez commenced this civil rights action *pro se* and *in forma pauperis* against Defendants, Correctional Officer Cuoco and Lieutenant Fisher. At the time of the incidents described in the Complaint [doc. # 1], Mr. Montanez was an inmate housed in, and Defendants Cuoco and Fisher worked at, the MacDougall-Walker Correctional Institution, a state-run prison facility in Connecticut ("MacDougall"). Defendants Cuoco and Fisher filed the currently pending Motion to Dismiss [doc. # 22], which, for the reasons detailed below, the Court grants.[1]

## I.

In his Complaint, Mr. Montanez alleges that on January 8, 2007, he was walking down the main hallway at MacDougall carrying a file containing confidential legal papers, when Defendant Cuoco asked him where he was going and what was in the folder. Upon responding that he was going to the Medical Unit and that the folder contained his legal papers, Officer Cuoco ordered Mr. Montanez to return to his unit and to hand over his legal papers. When Mr. Montanez asked, "Sir

---

[1] This Court previously denied Mr. Montanez's Motion for a Restraining Order [doc. # 5] against Defendants Cuoco and Fisher because it concluded that the conditions alleged by Mr. Cuoco were rendered moot by his transfer to Robinson Correctional Institution and his pending discharge. *See* Ruling [doc. # 20].

is there a problem with my legal papers?," and requested to speak to a captain or lieutenant, Officer Cuoco grabbed him, put him against the wall, handcuffed him, and called a code to summon other officers to the scene. Lieutenant Fisher and other officers arrived shortly afterwards. Lieutenant Fisher took Mr. Montanez's legal papers, informed him that the papers would be safe and escorted him to the restrictive housing unit. On the same day, Mr. Montanez says, his property and other papers, both personal and legal, were taken from his cell. Mr. Montanez was later issued a disciplinary ticket for threatening a staff member.

A hearing for Mr. Montanez's disciplinary ticket was scheduled for January 17, 2007. However, Mr. Montanez – apparently worried about his health and presumably, that a hearing might prolong his detention – decided to plead guilty to the disciplinary ticket. As such on January 17, 2007, the disciplinary hearing officer sanctioned Mr. Montanez to seven days punitive segregation, ten days confinement to quarters and thirty days of loss of phone privileges. Mr. Montanez was released from segregation the same day. Upon being released from segregation, some of Mr. Montanez's property, but not, he alleges, his legal papers and the personal papers taken from his cell, were returned to him. Since his release from segregation, Mr. Montanez claims that he has repeatedly requested that staff at MacDougall return his legal papers, but to no avail. *See* Complaint [doc. # 1], Exs. B to E.

This Court previously reviewed Mr. Montanez's Complaint pursuant to 28 U.S.C. § 1915, and concluded that Mr. Montanez could proceed with his lawsuit insofar as he was asserting a claim under the Due Process Clause of the Fourteenth Amendment regarding Defendants' issuance of a disciplinary ticket and the process afforded him during the disciplinary hearing, as well as for the alleged improper confiscation of his legal and personal property. *See* Initial Review Order [doc. # 8]

2

at 1. Mr. Montanez sues Officer Cuoco and Lieutenant Fisher in their individual and official capacities and seeks both injunctive and monetary relief.

## II.

This Court has previously discussed at length the standard governing motions under Rule 12(b)(6). *See, e.g.*, *Beary v. ING Life Ins. & Annuity Co.*, 520 F. Supp. 2d 356, 361 (D. Conn. 2007). Suffice it to say that when considering a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson*, 127 S. Ct. at 2200 (quoting Fed. R. Civ. P. 8(a)(2)). Accordingly, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) (quotation marks omitted). Moreover, "'[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Boykin*, 521 F.3d at 214 (quoting *Erickson*, 127 S. Ct. at 2200).

## III.

Defendants have moved to dismiss the Complaint, arguing that: (1) they are entitled to Eleventh Amendment immunity on all claims requesting money damages and asserted against them in their official capacities; (2) they are entitled to immunity under Connecticut General Statute § 4-165; (3) Mr. Montanez has failed to state a claim upon which relief may be granted; and (4) they are entitled to qualified immunity.

As an initial matter, the Court will grant Defendants' Motion insofar as it claims Eleventh Amendment immunity, as it is well settled that "the Eleventh Amendment bars the award of money damages against state officials in their official capacities." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). Mr. Montanez does not claim that the State of Connecticut has waived its immunity in regard to his suit. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Miller v. Egan*, 265 Conn. 301, 314 (2003) (stating that a plaintiff may circumvent the doctrine of sovereign immunity where a state official "acted in excess of statutory authority, or pursuant to an unconstitutional statute," but that exception applies only where a plaintiff's claims seek declaratory and injunctive relief).

The Court will also quickly dispose of Defendants' argument that Mr. Montanez's claims seeking monetary damages against them in their individual capacities are barred by Connecticut General Statute § 4-165(a). That statute provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." However, although a state may protect its employees from suit under state law, "state law cannot shield state employees from liability for violations of federal law." *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 272 (D. Conn. 2001)(citing *Schiff v. Kerrigan*, 625 F. Supp. 704, 707 n. 7 (D. Conn.1986); *accord Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974) ("When a state officer acts under a state law in a manner violative of the Federal Constitution . . . '[t]he state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'") (quoting *Ex parte Young*, 209 U.S. 123, 160 (1908)). As noted, the Court previously construed Mr. Montanez's Complaint as asserting violations of his Due Process rights, which are pursued under federal, not state, law. And, to the extent that Mr. Montanez's Complaint may be construed as asserting any state law claims against Defendants, the

4

Court declines to exercise supplemental jurisdiction over those claims. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

Therefore, what remains of Mr. Montanez's Complaint is a claim against Defendants in their individual capacities for monetary damages, and in their official capacities for injunctive relief. *See Ford*, 316 F.3d at 354-55. In view of the fact that Mr. Montanez proceeds *pro se*, the Court articulates the claims that he might be construed as asserting under the Fourteenth Amendment Due Process Clause to include: (1) denial of his right of access to the courts, in the form of the seizure and failure to return his legal papers;[2] (2) denial of a property interest, in the form of his legal papers, without due process of law; and (3) denial of a liberty interest, in the form of his confinement in a segregation unit, without due process of law.

**A.      Access to Courts**

The Second Circuit has held that confiscation of a prison inmate's legal research and briefs can constitute the "[i]ntentional obstruction of a prisoner's access to the courts[, which] is precisely the sort of oppression that the Fourteenth Amendment and section 1983 are intended to remedy." *See Morello v. James*, 810 F.2d 344, 346-47 (2d Cir. 1987). The right of access to the courts is a substantive right unto itself and can constitute a viable legal claim even where no procedural due process rights are violated. *See id.* To state a claim of denial of his right of access to the courts, Mr. Montanez must plead that "he was denied his constitutional right of access to the courts *and* that he suffered actual injury as a result – that is, that Defendants took or were responsible for actions that

---

[2] "[T]he source of th[e] right [of access to courts] has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997).

hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts." *Page v. Lantz*, No. 3:05CV1271 (MRK), 2007 WL 1834519, at *3 (D. Conn. 2007) (citing *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002); *accord Lewis v. Casey*, 518 U.S. 343, 353 (1996).

The Court concludes that Mr. Montanez fails to state an access-to-courts claim for two reasons. First, he has not alleged that he was denied his constitutional right of access to the courts. That right does not apply to all claims, but rather, inmates have a constitutional right to file direct appeals from their convictions, petitions for writ of habeas corpus and actions challenging the conditions of their confinement, including, the Second Circuit holds, those asserted in an administrative proceeding. *See Lewis*, 518 U.S. at 355; *Friedl v. City of N.Y.*, 210 F.3d 79, 86 (2d Cir. 2000) ("Nothing in *Lewis* forecloses an administrative challenge by a prisoner to the conditions of his confinement . . . ."). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* Since Mr. Montanez describes the missing documents as his "legal papers," the Court assumes that he sought to use them in some litigating capacity. However, Mr. Montanez does not state in his Complaint what he intended to use the legal papers for, and consequently the Court is unable to conclude that he was engaged in litigation to which the right of access to courts extends.

Second, Mr. Montanez does not allege that he suffered "actual injury." In his Complaint, Mr. Montanez appears to assert that the injury he suffered was the seizure and loss of his legal papers. But, he does not go one step further, as is necessary to adequately assert a right of access to courts claim, to allege that the loss of his papers "hindered [his] efforts to pursue a legal claim . . . ." *Goord*, 320 F.3d at 351; *see Lewis*, 518 U.S. at 351 (stating, in the context of an inadequate prison

library claim, that a prisoner might meet this element by "show[ing], for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint."); *see also Page v. Lantz*, No. 3:05CV1271 (MRK), 2007 WL 1834519, at *3 (D. Conn. 2007). Further, Mr. Montanez does not provide the Court with any information that would enable it to construe his Complaint as satisfying these two elements. *See Erickson*, 127 S. Ct. at 2200. For these reasons, the Court dismisses Mr. Montanez's access-to-courts claim.[3]

## B. Property Interest – Procedural Due Process

Mr. Montanez also fails to state a claim of loss of a property interest without due process. The Court assumes, without deciding, that Mr. Montanez's Complaint asserts conduct more blameworthy than negligence. *See Daniels v. Williams*, 474 U.S. 327, 330-32 (1986) (holding that the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of

---

[3] In his Memorandum in Opposition to Defendants' Motion to Dismiss [doc. # 24], Mr. Montanez appears to suggest that Defendants took his papers to retaliate against him for seeking to exercise his right of access to the courts, a claim that would be viable in the Second Circuit. *See Franco v. Kelly*, 854 F.2d 584, 589-90 (2d Cir. 1988) (allowing right of access to courts claim to proceed where inmate contended that prison officials intentionally filed false disciplinary charges against him in retaliation for his cooperation with a state administrative investigation); *see also Blue v. Koren*, 72 F.3d 1075, 1082 n.3 (2d Cir. 1995); *Friedl*, 210 F.3d at 86. However, Mr. Montanez does not state a claim of this nature in his Complaint. Should Mr. Montanez seek to assert such a claim, he should file a motion for reconsideration and an Amended Complaint that informs the Court and the Defendants of the basis for any such retaliation claim. *Id.* at 85-86 ("In order to state a claim for retaliation under section 1983, a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity. To survive a motion to dismiss, such claims must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." (quotation marks and citations omitted)).

an official causing unintended injury to life, liberty or property); *Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005). Even so, to survive a motion to dismiss, Mr. Montanez would need to allege that the State did not provide him with a post-deprivation remedy, which is all that the Due Process Clause requires where as here, "a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing . . . ." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003); *see also Hudson v. Palmer*, 468 U.S. 517, 534 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981). Connecticut law provides post-deprivation remedies for individuals who wish to complain of unauthorized dispossession of property by state officials. They can file suit in state court, *see* Conn. Gen. Stat. §§ 4-142(2), 4-165, or if that is not possible, *see id*, they can file a claim with the Claims Commissioner, *see* Conn. Gen. Stat. § 4-141 *et seq.* Plaintiff does not allege that either of these remedies is unavailable to him. *See also Simmons v. Lantz*, No. 3:04CV2180 (RNC), 2007 WL 842008, at *2 (D. Conn. Mar. 12, 2007); *Vega v. Lantz*, No. 3:04CV1215 (DFM), 2006 WL 2788374, at *10 n.10 (D. Conn. Sept. 26, 2006). Nor are these remedies rendered inadequate simply because Mr. Montanez anticipates a more favorable remedy under the federal system or that it may take a longer time under the state system before his case is resolved. *See Hudson*, 468 U.S. at 535 (stating that possibility of state tort action was adequate post-deprivation remedy even where prisoner claimed that lost legal papers were "irreplaceable" and "incompensable"). In sum, it is not enough for Mr. Montanez to allege that his property was lost or destroyed. He also must allege that he has been denied due process of law – that is, that he was denied an opportunity to attempt to redress this alleged wrong through legal procedures. Accordingly, the Court will dismiss Mr. Montanez's procedural due process claim as it relates to his property interest in his legal papers.

8

## C. Liberty Interest – Procedural Due Process

Mr. Montanez also fails to state a claim that his confinement in a segregation unit deprived him of liberty without due process of law. This is because inmates "have no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *accord Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995). Rather, "the Constitution merely guarantees that prison inmates will 'not be deprived of a protected liberty interest without due process of law.'" *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988) (quoting *Freeman*, 808 F.2d at 951). Thus, "a fair hearing, conforming to . . . due process standards . . . w[ill] 'cure' a constitutional violation otherwise resulting from a false accusation." *Grillo v. Coughlin*, 31 F.3d 53, 56 (2d Cir. 1994) (quoting *Freeman*, 808 F.2d at 954). Under the Due Process Clause, "[i]nmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481 (2d Cir. 2004); *accord Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

The Court, assumes, without deciding, that the confinement Mr. Montanez faced constitutes a protected liberty interest. *See Kalwasinski v. Morse*, 201 F.3d 103, 107-08 (2d Cir. 1999) (discussing factors relevant to deciding if confinement in special housing unit constitutes an atypical hardship). However, it is apparent that Mr. Montanez received all the process to which he was due. Mr. Montanez acknowledges receiving notice of the charge in advance of the hearing date. *See* Complaint [doc. # 1], Ex. A at 3. In pleading guilty, he chose to forgo a hearing and the opportunity to call witnesses and present evidence to a fair and impartial hearing officer. And this is so, even

though he acted because he wanted to minimize the time he would have to spend in segregation. *Id.* at 5, Ex. B. Further, he received a written statement from the hearing officer indicating the reasons for the sanctions imposed. *See id.*, Ex. B at 4-5. Accordingly, because Mr. Montanez was afforded due process at the disciplinary hearing, he fails to state a claim for loss of a liberty interest in violation of his due process rights.

Having found that Mr. Montanez does not state claims upon which relief can be granted, the Court need not address Defendants' final argument that they are entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (requiring courts confronted with qualified immunity defenses first to determine whether a constitutional right has been violated before determining whether that right has been clearly established).

## IV. Conclusion

Defendants' Motion to Dismiss [doc. # 22] is **GRANTED**. As already noted, to the extent that Mr. Montanez's Complaint may be construed as asserting any state law claims against Defendants, the Court declines to exercise supplemental jurisdiction over those claims. *See Valencia ex rel. Franco*, 316 F.3d at 305. If Mr. Montanez believes that the Court has not properly construed his Complaint, or has information that would render his right of access to the courts claim viable, he should file a motion to reconsider (along with an Amended Complaint), addressing the defects in his Complaint by **August 19, 2008**. **The Clerk is directed to close this file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: July 28, 2008.**